# United States District Court
## Western DISTRICT OF Texas

FILED
JUL 2 4 2007
CLERK, U.S. DISTRICT OF TEXAS
WESTERN DISTRICT
BY _____ DEPUTY CLERK

UNITED STATES OF AMERICA

V.

**Christian Blake Fisher**

**CRIMINAL COMPLAINT**

CASE NUMBER:

07-M-3624G

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **July 23, 2007** in **El Paso County**, in the **Western District of Texas** defendant(s) did, knowingly and intentionally possess with the intent to distribute **Marijuana**, to wit: approximately **161.90 pounds** (gross weight) of **Marijuana**, a Schedule I Controlled Substance; and did knowingly and intentionally import into the United States from the Republic of Mexico, approximately **161.90 pounds** (gross weight) of **Marijuana**, a Schedule I Controlled Substance in violation of **Title 21 United States Code, Section(s) 841(a)(1) and 952(a).**

I further state that I am an **United States Immigration and Customs Enforcement Special Agent** and that this complaint is based on the following facts:

### See Attached Affidavit

Continued on the attached and made a part hereof:___X___ Yes _____ No

_____
Signature of Complainant
Michael Law, Senior Special Agent

Sworn to before me and subscribed in my presence,

July 24, 2007                                      El Paso, Texas
Date                                               City and State

**Michael McDonald**, U.S. Magistrate Judge          _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

AFFIDAVIT

On July 23, 2007, at approximately 1620 hours, Christian Blake Fisher entered the United States from the Republic of Mexico at the Bridge of the Americas Port of Entry, El Paso, Texas. FISHER was the driver and sole occupant of a 1993 GMC Sierra pickup bearing Kansas registration.

FISHER approached lane number 7 primary inspection booth. FISHER gave a negative declaration to United States Customs and Border Protection Officer (CBPO) Gustavo Santa Cruz. FISHER stated that he was a United States Citizen and produced a Missouri Driver's license bearing the name Joshua Mayse D1032965. FISHER stated that the purpose for his visit to Mexico was to purchase three bottles of liquor and that he was in El Paso, Texas for a family reunion. CBPO Gustavo SantaCruz observed that the gas tank was extremely clean. CBPO Santa Cruz escorted FISHER to the secondary area for further inspection.

In the Secondary area, FISHER gave a negative declaration to CBPO Fernando Thome. CBPO Thome observed that FISHER was sweating profusely. CBPO Thome questioned FISHER as to his purpose for visiting Mexico, how long FISHER had been in the area, how much money FISHER had on his person, if FISHER had walked into Mexico, who owned the vehicle, if FISHER had loaned the vehicle or keys to anyone, and if FISHER was responsible for everything in the vehicle.

FISHER replied that he bought three (3) liquor bottles for his cousin, that he had been in the area for four days with his cousin, that he had $20.00 dollars, that he had not walked into Mexico, but had driven the truck into Mexico, that he had owned the vehicle and had it for two weeks, that he had not loaned the vehicle or keys to anyone, and that he had not done any mechanical work to the vehicle. CBPO Thome noticed that FISHER started breathing very rapidly during the questioning. FISHER stated that he was responsible for everything in the vehicle.

During this questioning, FISHER consistently interrupted CBPO Thome's questions by showing the officer a sheet of paper with an address and asking if CBPO Thome could give FISHER directions to the address. CBPO Thome asked FISHER who the directions belonged to and FISHER stated his cousin. CBPO Thome then stated to FISHER that he had told the officer that he had been at his cousin's house for the last four days and why FISHER would not know the directions to drive to his cousin's house. FISHER could not answer.

Subsequently, CBPO Thome used a fiber optic scope to inspect the vehicle's gas tank and observed metal containers. FISHER was placed in hand restraints and escorted to the Head house.

Inspection of the vehicle's gas tank revealed two non-factory containers. Inspection of the non-factory containers revealed compressed bundles consisting of a green leafy substance. One bundle was probed and a green leafy substance was extracted, field-tested which yielded a positive result for the properties of marijuana. A total of two (2) bundles were removed from the gas tank for a total weight of 161.90 pounds (net weight) of marijuana.

United States Immigration and Customs Enforcement Senior Special Agent (SSA) Joseph Quigg and Special Agent (SA) Jesus Carrillo arrived at the Bridge of the Americas Port of Entry and began an investigation. SA Jesus Carrillo read FISHER his Miranda Statement of Rights in the English language. FISHER acknowledged in writing that he understood his

rights and he agreed to make a statement without the presence of an attorney. SSA Joseph Quigg and SA Jesus Carrillo conducted an interview with FISHER.

FISHER stated that a man named MAYA paid him five thousand dollars to buy the truck in Kansas City, Missouri. MAYA gave FISHER a Missouri Driver's license bearing the name of Joshua D MAYSE and FISHER registered the vehicle under that name. FISHER stated the vehicle cost $1,500.00 and that he kept the rest of the money ($3,500.00). FISHER also stated he was going to be paid $11,000.00 USD to drive the vehicle from Missouri to Juarez, Mexico and back again to Missouri. En route to Mexico, the vehicle started leaking oil and FISHER called MAYA and stated that he wanted to turn back to Missouri, but MAYA stated he would pay FISHER twice as much ($22,000.00 USD) to continue driving to Mexico. FISHER believed that he was transporting money from Missouri to Mexico.

FISHER did not want to be informed what he would be bringing into the United States. However he believed it was drugs or fake money.

2007240200204501
Joseph Quigg, Case Agent